A02A2259. HAYWARD v. THE STATE.
(574 SE2d 646)

ELDRIDGE, Judge.

A Thomas County jury found Timothy Noel Hayward guilty of armed robbery, possession of a firearm during the commission of a crime, aggravated assault, and, in a bifurcated proceeding, possession of a firearm by a convicted felon, which charges arose from acts Hayward committed at the Quick Pack convenience store on Highway 84 in Boston, Georgia. He appeals, claiming error in the introduction of improper character evidence and inadmissible hearsay. Upon review, we find no grounds for reversal and affirm Hayward's conviction.

1. Hayward first challenges the trial court's rulings on two motions in limine grounded in the improper admission of character evidence.

(a) Hayward claims error in the trial court's denial of a motion in limine wherein he sought to prevent the State from using the term "shoplifting" to refer to a prior act of shoplifting that Hayward admittedly committed — and was videotaped committing — at the Quick Pack a week before the armed robbery. We find no error in the denial of this motion. The prior act of shoplifting was one of the bases by which the clerk at the Quick Pack was able to identify Hayward as the perpetrator of the armed robbery. As such, it was relevant and admissible for the purpose of establishing identity. "[E]vidence that is otherwise relevant or material to the issues in a criminal case does not become inadmissible simply because it concerns separate offenses, or because it incidentally puts a criminal defendant's char-

---

[9] See generally *Reynolds v. State*, 266 Ga. 235, 236-237 (2) (466 SE2d 218) (1996).

acter or reputation in evidence."[1] Since evidence of the prior criminal act was admissible for purposes of identification, it was not error for the trial court to permit the State to call the act by its name, "shoplifting."

(b) Hayward also claims error in the trial court's denial of his motion in limine to preclude the State from introducing that portion of his alibi statement to the police wherein Hayward claimed he could not have committed the armed robbery of the Quick Pack, because he was buying and selling drugs in Thomasville at the time of the armed robbery. The State argues that, since Hayward made such statement knowingly and voluntarily, it was admissible in its entirety regardless of its reference to other crimes. We cannot agree.

It is true that when portions of a defendant's statement are "an integral part of a criminal confession, . . . such statements are not rendered inadmissible because the language used therein indicates that the accused has committed another and separate offense."[2] It is clear, however, that Hayward's statement was *exculpatory* of his guilt for the charged offenses. Therefore, the reference to Hayward's involvement with drugs would not be admissible by the State as a part of an inculpatory criminal confession or statement.[3] Indeed, the drug statements at issue were part of Hayward's denial of the offenses for which he was on trial, and no evidence was introduced that would make the disputed statements relevant for impeachment purposes. Thus, the only possible evidentiary function Hayward's drug statements could have served — as far as the State was concerned — was to impugn Hayward's character.[4]

The State disclaims any improper motive in the introduction of those portions of Hayward's alibi statement which referenced drugs by directing our attention to evidence wherein the State proved that Hayward was armed-robbing the Quick Pack at the time in question, not dealing drugs in Thomasville. However, such disclaimer begs the question: Why, then, introduce Hayward's drug statements at all in contradiction of State's evidence? "[A]nd it is our view that its only purpose was to attempt to show bad character. In the absence of interjection of the issue of character by the defendant, this evidence was inadmissible."[5]

The State further claims that Hayward's "admitted drug use and

---

[1] (Citations and punctuation omitted.) *Dixon v. State*, 177 Ga. App. 506, 507 (2) (339 SE2d 775) (1986); accord *Hutson v. State*, 216 Ga. App. 100, 101 (5) (453 SE2d 130) (1995); see also *Adams v. State*, 272 Ga. 115, 117 (3) (527 SE2d 200) (2000).

[2] (Citations and punctuation omitted.) *Walker v. State*, 264 Ga. 79, 80 (3) (440 SE2d 637) (1994); *Frazier v. State*, 257 Ga. 690, 697 (14) (362 SE2d 351) (1987).

[3] *Felder v. State*, 266 Ga. 574, 575 (2) (468 SE2d 769) (1996).

[4] *Robinson v. State*, 192 Ga. App. 32, 33-34 (383 SE2d 593) (1989).

[5] (Citations and punctuation omitted.) *Felder v. State*, supra at 575-576.

involvement in the drug trade served as a motive for the armed robbery," and evidence thereof was thus admissible. Yet, the State's evidence proving Hayward committed the armed robbery of the Quick Pack also, necessarily, disproved Hayward's alibi claim of engaging in drug activity in Thomasville. And, other than the alibi statements, there was no other evidence connecting Hayward to drug activity. The State cannot have it both ways; a disproved alibi claim of drug dealings in Thomasville cannot serve as the motive for an armed robbery occurring simultaneously on Highway 84 in Boston. Accordingly, this evidence was inadmissible to demonstrate "motive."

> However, the trial court's error does not necessarily mandate a new trial. The standard for weighing nonconstitutional error in criminal cases is known as the "highly probable test," i.e., that it is highly probable that the error did not contribute to the judgment. Under that test, a reversal is not required if the evidence of guilt is overwhelming in that there is no reasonable probability that the verdict of the jury would have been different in the absence of this error.[6]

Here, the evidence against Hayward was truly overwhelming. The jury was shown two videotapes: one wherein Hayward was clearly caught on tape shoplifting wine in the Quick Pack, and the second wherein a man wearing a ski mask was seen on tape armed-robbing the Quick Pack. The masked robber bore a striking physical resemblance to Hayward as he was captured in the first, shoplifting video; photographs were made from the two videotapes and introduced in order to illustrate the similarities.

Further, Boston, Georgia, is a small town. Testimony demonstrated that "[i]n a little town like that, . . . you know about everybody's dog and cat over there." The clerk of the Quick Pack had worked there for four years and recognized Hayward as the perpetrator of the armed robbery, since Hayward was a customer at the store. In addition, local police officers had seen Hayward many times around Boston; when called to the scene to investigate the armed robbery, and after viewing the two videotapes, the officers immediately identified Hayward as the perpetrator. Also, a long-time Boston resident who had known Hayward "when the boy was born" was sitting under a tree near the Quick Pack at the time of the incident. He testified at trial that Hayward had come to the convenience store an hour earlier dressed in white shorts; "And when he came back the second time, he had a pair of jeans on, sweatshirt and a hood on." The videotape of the robbery showed the perpetrator wearing jeans, a

---

[6] (Citations and punctuation omitted.) Id. at 576.

sweatshirt, and a hood. The witness had seen Hayward with a .380 caliber handgun; the Quick Pack clerk testified that the perpetrator used a .380 caliber handgun. The witness testified that Hayward entered the Quick Pack and, shortly thereafter, he saw him running from the store; "Looked like he had a gun and something else in a bag or something, running down the road." The videotape showed and the store clerk testified that the perpetrator put the money from the armed robbery into a grocery store bag. Moreover, Hayward introduced nothing in contradiction of this strong State's evidence proving Hayward's perpetration of the armed robbery of the Quick Pack. Accordingly, under the circumstances presented here, the State's introduction of those portions of Hayward's exculpatory alibi statement referencing drugs does not constitute reversible error, since, "viewing the posture of the entire record, we find that it is highly probable that such error did not contribute to the verdict" of guilt on the armed robbery charge.[7]

2. In his last enumeration of error, Hayward contends the trial court erred when it failed to strike the hearsay testimony of a witness who introduced evidence about why she thought appellant Timothy Hayward's name was "Tim Holland": "The cashier, Tasha, knew him as Tim Holland. I think he goes by lots of names, and that's what she told — he told her, I mean." Upon review of the record, this testimony presents no basis for reversal.

(a) Hayward did not move to strike this testimony. His motion was made after two more questions and answers and was in reaction to a different response by the witness. Hayward was required to make a contemporaneous objection to the complained-of testimony in order to preserve this point of error for appellate review.[8]

(b) The testimony about which Hayward complains was deliberately elicited by the defense: "[Defense Counsel:] Who is Tim Holland? . . . How did you come to attach the name, Tim Holland, to Mr. Hayward? Who told you that his name was Holland? . . . Did somebody tell you his name was Holland? . . . And how did you come up with the name of Tim Holland?" Thus, regardless of the hearsay nature of the complained-of testimony, "[a] party cannot reap the benefit of any error caused or aided by his own trial tactics, procedure or conduct."[9]

---

[7] (Citations and punctuation omitted.) Id.; *Willis v. State*, 199 Ga. App. 658, 659 (2) (405 SE2d 739) (1991).

[8] *Gates v. State*, 252 Ga. App. 20, 22 (1) (555 SE2d 494) (2001); *Smith v. State*, 237 Ga. App. 616, 619 (3) (516 SE2d 319) (1999).

[9] (Punctuation and footnote omitted.) *Miller v. State*, 250 Ga. App. 84, 86 (2) (550 SE2d 134) (2001).

3. On August 28, 2002, forty-three days after the instant case was docketed in this Court, Hayward filed a second Appellant's Brief which contained the same three enumerations of error as the first, timely filed Appellant's Brief and the same arguments with regard thereto. However, on the last page of Appellant Brief II, an additional argument is made under the subheading "Motion for New Trial," alleging ineffective assistance of trial counsel. Rule 26 (a) of the Rules of the Court of Appeals of Georgia requires the enumerations of error to be filed within 20 days after the case is docketed in this Court. The second Appellant's Brief will not be considered inasmuch as enumerations of error may not be amended after the original filing time has expired, and an additional or supplemental brief cannot be used to argue enumerations not addressed in the original brief.[10]

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 22, 2002.

*Don T. Lyles*, for appellant.
*J. David Miller, District Attorney, James E. Hardy, James L. Prine II, Assistant District Attorneys*, for appellee.

---

[10] *Daniels v. State*, 244 Ga. App. 522, 523 (536 SE2d 206) (2000); *Parrish v. State*, 237 Ga. App. 274, 284 (11) (514 SE2d 458) (1999); *McGraw v. State*, 199 Ga. App. 389 (405 SE2d 53) (1991).