## A02A0820. McDONALD v. THE STATE.
### (568 SE2d 546)

POPE, Presiding Judge.

Talmadge McDonald was convicted of one count of aggravated stalking in Clarke County.

At trial, evidence was presented that McDonald was married to Laurie McDonald in December 1999. On December 16, 2000, the couple separated and McDonald moved out of Ms. McDonald's Oglethorpe County home. He returned on December 19, 2000, and spent the night. In the morning, he tied Ms. McDonald to her bed while she slept. When she woke up, she found that he had also taped her mouth closed. He tried to force her to drink lye. He then drank lye, threatened to kill himself and passed out.

Ms. McDonald freed herself and called the police. She then got a temporary restraining order in Oglethorpe County against McDonald; a copy of the order was served on him on December 28, 2000. The order prohibited McDonald from harassing or intimidating contact with Ms. McDonald.

Ms. McDonald testified that on January 5, 2001, she went to pay a bill in Clarke County. As she parked her car McDonald banged on her window and said that he wanted to talk to her. He told her to roll down her window, and he became enraged when she would not talk to him. He threatened her and kicked at her car as she drove away. Ms. McDonald was unable to get out of her car to attend to her business, and she called the police to report the incident. A warrant in Clarke County was then issued for McDonald's arrest. The charges in this case stem only from this incident — the other incidents occurred in Oglethorpe County.

At trial, Ms. McDonald testified about the Clarke County incident in the parking lot. She was also allowed to testify about the basis for the temporary protective order and her prior difficulties with McDonald in Oglethorpe County. She then testified about difficulties with McDonald in the days after the January 5 Clarke County incident. These later incidents also occurred in Oglethorpe County. She testified that after the incident in the parking lot, McDonald left threatening messages every day on her answering machine telling her that he was going to kill her and that he was going to burn her house down with her in it. She testified that he left many of these messages every day. She testified that on January 10, McDonald broke into her house and "took her away." She referred to the incident

as when McDonald had kidnapped her. Ms. McDonald's testimony concerning this subsequent event was brief, and during the direct examination defense counsel did not object. Furthermore, during defense counsel's cross-examination of Ms. McDonald, he asked her more details regarding the January 10 incident. Defense counsel elicited information from her that McDonald took her out of town during the incident and that he did not return her to town until January 12.

The State introduced into evidence a certified copy of the protective order which was served on McDonald. The State did not attempt to introduce any evidence of the criminal charges against McDonald arising from the Oglethorpe County incidents.

McDonald did not testify at trial, but his statement to police about the Clarke County incident was read to the jury in which he said that he had simply wanted to talk to Ms. McDonald on the incident date. He denied kicking her car and denied any threatening intent. The tape was turned off before McDonald discussed the January 10 event.

1. In his first enumeration of error, McDonald claims that the trial court was required to hold a hearing on the admissibility of prior and subsequent difficulties between the victim and the defendant. A few weeks before trial the State provided McDonald with notice of its intent to present evidence of the prior and subsequent difficulties with Ms. McDonald. In response to this notice, the court issued a rule nisi indicating that it would hold a hearing regarding the prior and subsequent difficulties at trial.

Before trial began, a bench conference was conducted at which the attorneys presented to the court their concerns regarding evidence of the Oglethorpe County incidents. The prosecutor explained to the court the timetable regarding McDonald's crimes: she stated that a temporary protective order was issued and served on McDonald on December 28 and that all of the ensuing events — both the Clarke County and Oglethorpe County incidents — occurred in the following ten days. Accordingly, argued the prosecutor, all of the actions about which Ms. McDonald planned to testify were part of the res gestae and of a continuing course of conduct. She also stated that the actions showed McDonald's state of mind. McDonald's attorney objected to the evidence because he did not think it was relevant. McDonald's attorney stated that his concerns about the relevancy were the reason he thought they were going to have a hearing outside of the jury's presence. The court stated that it would strike any testimony that was not relevant, and then defense counsel acquiesced. There was no further mention of a hearing during this conference.

When Ms. McDonald testified regarding the January 10 kidnapping incident, McDonald's defense counsel did not object, nor did he

request a hearing outside the jury's presence. Furthermore, as stated above, defense counsel elicited *more* information from the victim regarding the January 10 incident during his cross-examination of her.

At the conclusion of the trial, the court instructed the jury that "evidence of an independent occurrence which is immediately related in time and place to the charge being tried has been admitted for your consideration. It is for you the jury to determine whether it is or is not part of a single continuous transaction." With respect to prior difficulties between McDonald and the victim, the court charged that the evidence had been admitted for the sole purpose of showing "the state of feeling between the defendant and the alleged victim and the bent of mind, intent, motive and course of conduct on the part of the defendant."

McDonald, citing *Wall v. State*, 269 Ga. 506 (500 SE2d 904) (1998), argues that the court erred by failing to hold a hearing on the prior and subsequent difficulties between McDonald and his estranged wife. Nevertheless, given the specific facts of this case we find no reversible error.

With respect to the prior acts:

> it is not necessary for the trial court to conduct a pre-trial hearing . . . before evidence of prior difficulties between the victim and the defendant is admissible since evidence of a defendant's prior acts toward the victim is admissible because the prior acts are evidence of the relationship between the two and may show the defendant's motive, intent, and bent of mind in committing the act for which he is being tried. *Wall v. State*, 269 Ga. [at 506 (2)]. Accordingly, the admission of the evidence was not error. *Pye v. State*, 269 Ga. 779 (7) (505 SE2d 4) (1998).

*Graham v. State*, 274 Ga. 696, 698 (2) (558 SE2d 395) (2002).

Similarly, we find no reversible error in the court's failure to hold a hearing on the subsequent difficulties. First, we note that McDonald failed to object to the court's failure to hold a hearing and thus has failed to preserve this argument for our review. See generally *Jones v. State*, 272 Ga. 884, 887 (4) (536 SE2d 511) (2000). Moreover, even assuming arguendo that such a hearing was required, the court's failure to hold one was at most harmless error in light of the overwhelming evidence supporting the conviction. "In other words, in light of the overwhelming evidence of [McDonald's] guilt, it is highly probable that the admission of the evidence in question did not contribute to the verdict. [Cit.]" *Crosby v. State*, 240 Ga. App. 84, 85 (1) (522 SE2d 571) (1999).

2. McDonald also argues that the trial court erred in admitting evidence of the other acts because they were not relevant to the crimes for which he was being tried. He also argues that the other crimes were also unduly prejudicial.

We note that McDonald did not object on the basis of undue prejudice at trial and thus has waived this objection here. See *Lathan v. State*, 241 Ga. App. 750, 752 (3) (a) (526 SE2d 350) (1999). Similarly, we reject McDonald's argument that the evidence was not relevant. See *Wall v. State*, 269 Ga. at 506 (2).

*Judgment affirmed. Ruffin and Barnes, JJ., concur.*

DECIDED JULY 2, 2002.

*John W. Donnelly*, for appellant.

*Kenneth W. Mauldin, District Attorney, Anna E. Watkins, Assistant District Attorney*, for appellee.